Form G-3

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION          DIVISION

In re:  Pamela R. Shaw                    )    Chapter  13
                                          )
                                          )    No. 23-02510
                                          )
        Debtor(s)                         )    Judge  Deborah L. Thorne

### NOTICE OF MOTION

TO:  See attached list

     PLEASE TAKE NOTICE that on June 22, 2023_____, at _9:45_ a.m.___, I will appear before the Honorable _Deborah L. Thorne_____, or any judge sitting in that judge's place, **either** in courtroom _682_ of the Everett McKinley Dirksen United States Courthouse___, **or** electronically as described below, and present the motion of Carrington Mortgage Services, LLC_____ [to/for] _Relief from the Automatic Stay_____, a copy of which is attached.

     **All parties in interest, including the movant, may appear for the presentment of the motion either in person or electronically using Zoom for Government (audio only).**

     **To appear by Zoom using the internet**, go to this link:  https://www.zoomgov.com/. Then enter the meeting ID and passcode.

     **To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666.  Then enter the meeting ID and passcode.

     **Meeting ID and passcode.**  The meeting ID for this hearing is  _160 9362 1728_, and the passcode is _____n/a_____.  The meeting ID and passcode can also be found on the judge's page on the court's web site.

     **If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date.  If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

                  By: /s/ Alexandra Kalman_____

                         Alexandra Kalman, Esq.
                         Lender Legal PLLC
                         Attorney for Secured Creditor
                         1800 Pembrook Drive, Suite 250
                         Orlando, FL 32810
                         Phone: (407) 730-4644
                         akalman@lenderlegal.com

## CERTIFICATE OF SERVICE

      I, Alexandra Kalman, Esq.                    , certify [if an attorney]/declare under penalty of perjury under the laws of the United States of America [if a non-attorney] that I served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method indicated on the list on _____May 30, 2023_____, at _10:00am_.


                   /s/ Alexandra Kalman
                   [Signature]


Pamela R. Shaw
505 Racine Ln
Bolingbrook, IL 60440
(U.S. Mail)


David Freydin
Law Offices of David Freydin Ltd
8707 Skokie Blvd
Suite 312
Skokie, IL 60077
(ECF)


Trustee
Glenn B Stearns
801 Warrenville Road Suite 650
Lisle, IL 60532
(ECF)


U.S. Trustee
Patrick S Layng
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604
(ECF)

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

In re:                                          Case No. 23-02510
Pamela R. Shaw                                  Chapter 13 Case
    Debtor(s).                              Honorable Deborah L. Thorne

---

**CARRINGTON MORTGAGE SERVICES, LLC'S**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

    **COMES NOW**, Carrington Mortgage Services, LLC, its Successors and/or Assigns ("Secured Creditor"), by and through its undersigned counsel, as and for its Motion for Relief from the Automatic Stay, and states as follows:

1. The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP 4001(a) and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure and the laws of the United States of America.

2. The Debtor(s) filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code on February 26, 2023.

3. Secured Creditor holds a security interest in the Debtor(s)' real property located at 505 Racine Ln., Bolingbrook, IL 60440, by virtue of a Mortgage which is recorded in the Public Records of Will County, Illinois recording number R2020090072. Said Mortgage secures a Note in the amount of $173,794.00. Copies of the relevant loan documents are attached hereto as Composite **Exhibit "A"**.

4. The aforementioned Mortgage gives Secured Creditor a first mortgage position on property legally described as:

    **LOT 1, AREA 44, IN CENTEX-WINSTON CORP. BOLINGBROOK TOWNHOMES, UNIT NO. 5, BEING A SUBDIVISION OF PART OF THE SOUTHWEST ¼ OF SECTION 2 AND THE NORTHWEST ¼ OF**

**SECTION 11 IN TOWNSHIP 37 NORTH, AND IN RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED APRIL 25, 1972, AS DOCUMENT NO. R72-10688, TOGETHER WITH AN EASEMENT APPURTENANT TO THE ABOVE DESCRIBED REAL ESTATE AS DEFINED IN DECLARATION DATED JULY 7, 1971, AS DOCUMENT NO. R71-15260, AS AMENDED IN WILL COUNTY, ILLINOIS.**

**Commonly Known as:  505 Racine Ln., Bolingbrook, IL 60440**

5. The Debtor(s) is/are indebted to Secured Creditor in the amount of $169,688.67 principal balance, with interest accruing at the rate of 2.75 percent, plus other fees and costs advanced by the mortgagee pursuant to the loan documents. See **Exhibit "B"** attached hereto.

6. Secured Creditor filed a timely Proof of Claim (Claim No.16) with arrears in the amount of $24,226.93 and a regular monthly payment in the amount of $1,409.00.

7. Debtor's Chapter 13 Plan (Doc. No. 10) proposes to cure arrears in the amount of $24,066.80 and pay Secured Creditor the regular monthly payment of $1,441.17 direct and outside the Plan.

8. However, the Post-Petition default date is March 1, 2023. Payments pursuant to the aforementioned Mortgage have been in default, and remain in default, since November 1, 2021.

9. Thus, the Debtor(s) has/have failed to adequately protect the interest of Secured Creditor.

10. Secured Creditor's security interest in the subject property is being significantly jeopardized by the Debtor(s)' failure to make regular payments under the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such security interest.

11. Therefore, Secured Creditor maintains that cause exists pursuant to 11 U.S.C. § 362(d)(1) for the automatic stay to be lifted.

12. Secured Creditor further requests that the Court Order entered pursuant to the instant Motion provide that all communications sent by the Secured Creditor in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement or other Loan Workout, may be sent directly to the Debtor.

13. Carrington Mortgage Services, LLC services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the promissory note. Movant will enforce the promissory note as transferee in possession. Movant is the original mortgagee or beneficiary or the assignee of the Mortgage.

14. Per the terms of the subject Note and Mortgage, Movant is entitled to recover its reasonable attorney's fees and costs related to the prosecution of this Motion, and would request this Court award Movant its reasonable attorney's fees, and $188.00 in costs for the filing of this Motion.

15. Pursuant to 11 U.S.C. § 362(e), Secured Creditor hereby requests that in the event a hearing is necessary, that said hearing be held within thirty (30) days.

16. Secured Creditor respectfully requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3), so that Secured Creditor can pursue its in rem remedies without further delay.

**WHEREFORE**, Secured Creditor respectfully requests that the automatic stay be lifted so that Secured Creditor may be permitted to pursue *in rem* remedies outside of the bankruptcy forum, that in the event that a hearing is necessary on this Motion that said hearing be held within thirty (30) days, and for such other further relief as the Court may deem just and proper.

Respectfully submitted:

/s/ Alexandra Kalman
Alexandra Kalman, Esq.
Florida Bar No. 109137
Lender Legal PLLC
Attorney for Secured Creditor
1800 Pembrook Dr. Suite 250
Orlando, FL 32810
Phone: (407) 730-4644
akalman@lenderlegal.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion for Relief from the Automatic Stay was either sent electronically or by U.S. mail, first-class postage pre-paid, to:

Pamela R. Shaw
505 Racine Ln
Bolingbrook, IL 60440
(U.S. Mail)

David Freydin
Law Offices of David Freydin Ltd
8707 Skokie Blvd
Suite 312
Skokie, IL 60077
(ECF)

Trustee
Glenn B Stearns
801 Warrenville Road Suite 650
Lisle, IL 60532
(ECF)

U.S. Trustee
Patrick S Layng
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604
(ECF)

on May 26, 2023.

Respectfully submitted:

/s/ Alexandra Kalman
Alexandra Kalman, Esq.
Florida Bar No. 109137
Lender Legal PLLC
Attorney for Secured Creditor
1800 Pembrook Dr. Suite
250Orlando, FL32810
Phone: (407) 730-4644
akalman@lenderlegal.com

# EXHIBIT "A"

# NOTE

MIN: ███████████        Loan Number: ███████████

Case Number: ███████████

AUGUST 21, 2020                  Warrenville                    ILLINOIS
      [Date]                         [City]                      [State]

505 RACINE LN, BOLINGBROOK, ILLINOIS 60440
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 173,794.00          (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is GUARANTEED RATE, INC., A DELAWARE CORPORATION                                                                                .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          2.750   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1st  day of each month beginning on        OCTOBER 1     , 2020          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on        SEPTEMBER 1, 2050      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 0054 PALATINE, IL 60055-0054

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $  709.50                      .

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE 06/14/16                         Page 1 of 4          *DocMagic eForms*
                                                               *www.docmagic.com*

Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be       4.000    % of the overdue payment of Principal and Interest (P&I). I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE  06/14/16                              Page 2 of 4                          *DocMagic eForms*
*www.docmagic.com*

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

>      If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

>      If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
Pamela Shaw                              -Borrower

*[Sign Original Only]*

Loan Originator: Eric Hamilton, NMLSR ID 414113
Loan Originator Organization: Guaranteed Rate, Inc, NMLSR ID 2611

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE  06/14/16                      Page 4 of 4                      *DocMagic eForms*
                                                                          *www.docmagic.com*

# ENDORSEMENT ALLONGE

## To be made a part of the Mortgage Note reference herein

Re: Mortgage Note Dated:   **8/21/2020**            Loan Number:   ██████████

Mortgagors:   **Pamela Shaw**

Property Address:   **505 RACINE LN**

**BOLINGBROOK , IL  60440**

Loan Amount:   **$173,794.00**

PAY TO THE ORDER OF:

WITHOUT RECOURSE:

GUARANTEED RATE, INC.

A DELAWARE CORPORATION

3940 NORTH RAVENSWOOD

CHICAGO, IL 60613

_____

**Olivia Doe**

POST CLOSING SPECIALIST

# Illinois Anti-Predatory Lending Database Program

## Certificate of Compliance



**Report Mortgage Fraud**
**844-768-1713**

**R2020090072**
**KAREN A. STUKEL**
**WILL COUNTY RECORDER**
**RECORDED ON**
**10/15/2020 11:32:10 AM**
**REC FEE: 42.00**
**IL RENTAL HSNG: 9.00**
**PAGES: 18**
**MKE**

---

The property identified as:    PIN: 12-02-02-312-033

**Address:**
**Street:**    505 RACINE LN
**Street line 2:**
**City:** BOLINGBROOK    **State:** IL    **ZIP Code:** 60440

**Lender:** Guaranteed Rate Inc

**Borrower:** Pamela Shaw, unmarried woman

**Loan / Mortgage Amount:** $173,794.00

Pursuant to 765 ILCS 77/70 et seq., this Certificate authorizes the County Recorder of Deeds to record a residential mortgage secured by this property and, if applicable, a simultaneously dated HELOC.

**FIRST AMERICAN TITLE**

ORDER # ███████████

**Certificate number:** 1B8AC080-FA39-41B6-90D7-20D2A9D16C68    **Execution date:** 8/21/2020

*1 of 18*



This Instrument Prepared By:
Theresa Little
3940 N RAVENSWOOD
CHICAGO ILLINOIS 60613

After Recording Return To:
GUARANTEED RATE, INC.
4410 N. RAVENSWOOD AVE.
CHICAGO, ILLINOIS 60640
Loan Number:

_____ [Space Above This Line For Recording Data] _____

FHA Case No:

MIN:                                                        **MERS Phone:**

## MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** **"Security Instrument"** means this document, which is dated    AUGUST 21, 2020        , together with all Riders to this document.
**(B)** **"Borrower"** is   PAMELA SHAW, UNMARRIED WOMAN

Borrower is the mortgagor under this Security Instrument.
**(C)** **"MERS"** is  Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the mortgagee under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D)** **"Lender"** is   GUARANTEED RATE, INC.

Lender is a                    DELAWARE CORPORATION                          organized
and existing under the laws of                         DELAWARE
Lender's address is 3940 N RAVENSWOOD, CHICAGO, ILLINOIS 60613

**(E)** **"Note"** means the promissory note signed by Borrower and dated    AUGUST 21, 2020
The Note states that Borrower owes Lender   ONE HUNDRED SEVENTY-THREE THOUSAND SEVEN
HUNDRED NINETY-FOUR AND 00/100            Dollars (U.S. $ 173,794.00          )

ILLINOIS FHA MORTGAGE - MERS
ILMTGZ2.FHA  12/27/17

DocMagic *eForms*
www.docmagic.com

plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   SEPTEMBER 1, 2050   .

**(F)**   **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)**   **"Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)**   **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider         ☒ Planned Unit Development Rider
☐ Condominium Rider             ☒ Other(s) [specify] Fixed Interest Rate Rider

**(I)**   **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)**   **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)**   **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)**   **"Escrow Items"** means those items that are described in Section 3.

**(M)**   **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)**   **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)**   **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)**   **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)**   **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R)**   **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY                 of                          Will                 :
[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 12-02-02-312-033

which currently has the address of   505 RACINE LN
                                                                          [Street]

BOLINGBROOK              , Illinois              60440              ("Property Address"):
[City]                                                    [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    **UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

    **1.    Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:

(a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and, Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3.  Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.

Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater

or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.  Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7.  Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or

condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11.** **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability

---

ILLINOIS FHA MORTGAGE - MERS
ILMTGZ2.FHA  12/27/17

DocMagic *eForms*
www.docmagic.com

under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

---

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else

to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

**25. Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
Pamela Shaw                               -Borrower


_____          _____
Witness                                   Witness

PROVIDED TO DATA TREE BY WILL COUNTY RECORDER

ILLINOIS FHA MORTGAGE - MERS
ILMTGZ2.FHA  12/27/17

DocMagic eForms
www.docmagic.com

———————————— [Space Below This Line For Acknowledgment] ————————————

State of ___ILLINOIS_____ )
                               ) ss.
County of ___Will_____ )

I ___*Heather May*_____ certify that
      (here give name of officer and his official title)

__Pamela Shaw_____

_____

(name of grantor, and if acknowledged by the spouse, his or her name, and add "his or her spouse")

personally known to me to be the same person whose name is (or are) subscribed to the foregoing instrument,
appeared before me this day in person, and acknowledged that he (she or they) signed and delivered the instrument
as his (her or their) free and voluntary act, for the uses and purposes therein set forth.

Dated: ___AUGUST 21, 2020___

OFFICIAL SEAL
HEATHER MAU
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/07/21

_____
(Signature of officer)

(Seal)

Loan Originator: Eric Hamilton, NMLSR ID █████
Loan Originator Organization: Guaranteed Rate, Inc, NMLSR ID █████

ILLINOIS FHA MORTGAGE - MERS
ILMTGZ2.FHA 12/27/17

DocMagic eForms
www.docmagic.com

Page 13 of 13

Loan Number: ████████

# FHA FIXED INTEREST RATE RIDER

FHA Case No.: ███████████████

Date: AUGUST 21, 2020

Lender: GUARANTEED RATE, INC.

Borrower: Pamela Shaw

THIS FIXED INTEREST RATE RIDER is made this 21st day of    AUGUST, 2020 and is incorporated into and shall be deemed to amend and supplement the Mortgage (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's note (the "Note") of even date herewith, to GUARANTEED RATE, INC.
                                             (the "Lender"), covering the Property described in the Security Instrument and located at:

505 RACINE LN, BOLINGBROOK, ILLINOIS 60440
[Property Address]

**ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:**

Notwithstanding anything to the contrary set forth in the Security Instrument, Borrower and Lender hereby agree to the following:

Borrower owes Lender the principal sum of ONE HUNDRED SEVENTY-THREE THOUSAND SEVEN HUNDRED NINETY-FOUR AND 00/100         Dollars (U.S. $ 173,794.00         ) at the rate of       2.750 %.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed Interest Rate Rider.

_Pamela Shaw_ _____ (Seal)
Pamela Shaw                        -Borrower

ILLINOIS FHA FIXED INTEREST RATE RIDER
ILFHAFIR.RDR  09/03/19                                      **DocMagic** *eForms*

505 RACINE LN
APN: 12-02-02-312-033

# PLANNED UNIT DEVELOPMENT RIDER

Loan Number: ▆▆▆▆▆▆▆

FHA Case No. ▆▆▆▆▆▆▆

THIS PLANNED UNIT DEVELOPMENT RIDER is made this                    21st            day of
AUGUST, 2020               , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Note ("Note") to  GUARANTEED RATE,
INC., A DELAWARE CORPORATION
"Lender" of the same date and covering the Property described in the Security Instrument and located at:

505 RACINE LN, BOLINGBROOK, ILLINOIS 60440
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as:

CENTEX WINSTON CORP, BOLLINGBROOK TOWNHOMES
[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.   So long as the Owners Association (or equivalent entity holding title to common areas and facilities),
acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master"
or "blanket" policy insuring the property located in the PUD, including all improvements now existing
or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides
insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including
fire and other hazards included within the term "extended coverage," and loss by flood, to the extent
required by the Secretary, then:

(i)   Lender waives the provision in Paragraph 3 of this Security Instrument for the monthly payment
to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property,
and

(ii)  Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance
coverage on the Property is deemed satisfied to the extent that the required coverage is provided
by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of
any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of
restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any
proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the
sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

---

MULTISTATE PUD RIDER                                                          *DocMagic eForms*
USFHAP.RDR  09/01/14                      Page 1 of 2                         *www.docmagic.com*

B.    Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.    If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)       _____ (Seal)
Pamela Shaw          -Borrower                                -Borrower

_____ (Seal)       _____ (Seal)
                       -Borrower                              -Borrower

_____ (Seal)       _____ (Seal)
                       -Borrower                              -Borrower

LEGAL DESCRIPTION

Legal Description:  LOT 1, AREA 44, IN CENTEX-WINSTON CORP. BOLINGBROOK TOWNHOMES, UNIT NO. 5, BEING A SUBDIVISION OF PART OF THE SOUTHWEST 1/4 OF SECTION 2 AND THE NORTHWEST 1/4 OF SECTION 11, IN TOWNSHIP 37 NORTH, AND IN RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED APRIL 25, 1972, AS DOCUMENT NO. R72-10688, TOGETHER WITH AN EASEMENT APPURTENANT TO THE ABOVE DESCRIBED REAL ESTATE AS DEFINED IN DECLARATION DATED JULY 7, 1971, AS DOCUMENT NO. R71-15260, AS AMENDED, IN WILL COUNTY, ILLINOIS.

Permanent Index #'s: 12-02-02-312-033

Property Address: 505 Racine Lane, Bolingbrook, Illinois 60440

PROVIDED TO DATA TREE BY WILL COUNTY RECORD

**R2023011000**
**KAREN A. STUKEL**
**WILL COUNTY RECORDER**
**RECORDED ON**
**03/09/2023 09:42:31 AM**
**REC FEE: 42.00**
**IL RENTAL HSNG: 9.00**
**PAGES: 3**
**MKE**

Prepared by and return to:
Meaghan J. Diaz de Villegas, Esq.
Lender Legal PLLC
2807 Edgewater Drive
Orlando, FL 32804

## CORPORATE ASSIGNMENT OF MORTGAGE

| | |
|---|---|
| Assignor: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as mortgagee, as nominee for Guaranteed Rate, Inc., its successors and assigns,** whose address is P.O. Box 2026, Flint, MI 48501-2026. Phone number: (888) 679-6377. |
| Assignee: | **CARRINGTON MORTGAGE SERVICES, LLC** whose address is 1600 South Douglass Road, Suite 200-A, Anaheim, CA 92806. |
| Mortgage Executed By: | **PAMELA SHAW, Unmarried Woman** |
| Date of Mortgage: | August 21, 2020, Recorded: October 15, 2020 as Document Number 2020090072 in the Public Records of Will County, Illinois. MIN: ███████ |
| Property Identification Number (PIN): | 12-02-02-312-033-0000. |
| Legal Description: | LOT 1, AREA 44, IN CENTEX-WINSTON CORP. BOLINGBROOK TOWNHOMES, UNIT NO. 5, BEING A SUBDIVISION OF PART OF THE SOUTHWEST 1/4 OF SECTION 2 AND THE NORTHWEST 1/4 OF SECTION 11, IN TOWNSHIP 37 NORTH, AND IN RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED APRIL 25, 1972, AS DOCUMENT NO. R72-10688, TOGETHER WITH AN EASEMENT APPURTENANT TO THE ABOVE DESCRIBED REAL ESTATE AS DEFINED IN DECLARATION DATED JULY 7, 1971, AS DOCUMENT NO. R71-15260, AS AMENDED, IN WILL COUNTY, ILLINOIS.. |
| Property Address: | 505 RACINE LN, BOLINGBROOK, IL 60440. |

Page 1 of 2

IL-SHAW, PAMELA | 505 RACINE LN |

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor pursuant to the hereby unconditionally assigns unto the above-named Assignee, the said Mortgage, along with any and all modifications, having an original principal sum of $173,794.00 with interest, secured thereby, and the said Assignor hereby grants and conveys unto the said Assignee, all of Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

By: _____

Print: _____ Veronica Robles _____
              Default Supervisor

Title: _____

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as mortgagee, as nominee for Guaranteed Rate, Inc., its successors and assigns** (Corporate Seal)

STATE OF _____
COUNTY OF _____

On _____ before me, _____, a Notary Public, personally appeared _____, as _____ of _____, who is proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

See Attached

_____ (Seal)
Signature

(This area for notarial seal)                    Notary Expires:

Page 2 of 2

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document, to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

# CALIFORNIA ALL – PURPOSE

## CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of Orange

On February 17th, 2023 before me, Naibe L. Nava, Notary Public, personally appeared, **Veronica Robles,** who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



Signature _____

Naibe L. Nava

NAIBE L. NAVA
Notary Public - California
Orange County
Commission # 2429160
My Comm. Expires Dec 5, 2026

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER
- ☐ Individual (s)
- ☐ Corporate Officer

_____
(Title)

- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM
*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they- is /are-) or circling the correct form. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

# EXHIBIT "B"

## CARRINGTON MORTGAGE SERVICES MFR/NOD REFERRAL SHEET

| Property Address | 505 RACINE LN BOLINGBROOK IL 60440 | | Vesting | , , CARRINGTON MORTGAGE SERVICES, LLC, |
|---|---|---|---|---|

### Mortgager Information

| | |
|---|---|
| Account # | ████████ |
| FHA Case # | ████████ |
| Mortgager | PAMELA SHAW |
| Co-Mortgager | |
| Date Last Payment Received | 12/28/2021 |
| Last Payment Amount | $0.00 |
| Current UPB | $169,688.67 |
| Motion Type | Delinquent Payments |

**Loan Type:** Non-DSI

### MFR Totals

| | | |
|---|---|---|
| Total Payments Due | $ | 4,227.00 |
| Uncollected Interest Due | $ | - |
| Total Fees Due | $ | - |
| Total Cost Due | $ | - |
| Total Late Charges Due | $ | - |
| Post Suspense Balance | | $0.00 |
| Total Due for MFR | $ | 4,227.00 |

| Contractual Due Date | 11/1/2021 |
|---|---|
| Post-Petition Due Date | 3/1/2023 |

### BK Information

| | |
|---|---|
| BK Case # | 23-02510 |
| BK Chapter | 13 |
| BK Filing State | IL |
| Debtor | PAMELA SHAW |
| Co-Debtor | |

### Payment Due Detail

| From | To | P&I | Escrow | Total Payment Amount | # of Missed Payments | Total |
|---|---|---|---|---|---|---|
| 3/1/2023 | 5/1/2023 | $709.50 | $699.50 | $1,409.00 | 3 | $4,227.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | **Total** | $4,227.00 |

### Delinquent Taxes / Corporate Advance Detail

| Year | Amount | Expense Description | Fee Amount | Cost Amount |
|---|---|---|---|---|
| | | BPO | | |
| | | BK Fees & Costs | | |
| | | Property Inspections | | |
| | | NSF Fees | | |
| | | Corporate Advance | | |
| | | Expense Advance | | |
| | | Escrow Shortage | | |
| **Total** | $ - | **Total** | $ - | $ - |